SO ORDERED.

SIGNED this 31 day of March, 2017.

_David M. Warren_
**David M. Warren**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                          CASE NO. 15-02651-5-DMW

KYLE K. RYAN
                                                CHAPTER 7
    DEBTOR

---

KYLE K. RYAN

        PLAINTIFF

    vs.                                         ADVERSARY PROCEEDING NO.

                                                15-00081-5-DMW

DEFENSE FINANCE AND
ACCOUNTING SERVICE

        DEFENDANT

## MEMORANDUM OPINION

This matter comes before the court upon the Complaint of Kyle K. Ryan ("Plaintiff") filed

on August 7, 2015, seeking the determination that an alleged debt owed by the Plaintiff to Defense

Finance and Accounting Service ("Defendant") is discharged pursuant to 11 U.S.C. § 727 and

objecting to the allowance of the Defendant's claim for this debt. The court conducted a trial on

October 12, 2016 in Raleigh, North Carolina. J.M. Cook, Esq. appeared for the Plaintiff, and C. Michael Anderson, Esq. appeared for the Defendant. At the conclusion of the trial, the court took the matters under advisement. On March 31, 2017, the court entered Judgment in favor of the Defendant, ruling that the Defendant has a non-dischargeable claim against the Plaintiff in the amount of $8,989.64. Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, incorporated by Rule 7052 of the Federal Rules of Bankruptcy Procedure, this Opinion sets forth the court's findings of fact and conclusions of law in support of the Judgment.

**FINDINGS OF FACT**

At the trial, the Plaintiff testified on his own behalf and introduced eleven exhibits which the court admitted into evidence. Master Sergeant Bradley M. Hallum, Senior Career Counselor in the United States Army ("Army"), and Alton L. Campbell, Chief of the Defendant's Claims Management Division, testified on behalf of the Defendant, and the Defendant introduced ten exhibits which the court admitted into evidence.[1] After considering the evidentiary testimony and exhibits in concert with the court's record of both this adversary proceeding and the Plaintiff's underlying bankruptcy proceeding, the court finds the facts to be as follows:

<u>The Parties</u>

1.      The Plaintiff is a citizen and resident of Johnston County, North Carolina.

2.      The Defendant is an agency of the United States Department of Defense and provides accounting and finance services for the civilian and military members of the Department of Defense, including all branches of the United States Armed Forces.

---

[1] The parties presented virtually identical sets of exhibits at the trial. In some instances, a relevant document provided by both parties was formally admitted into evidence only as an exhibit for one of the parties, and in other instances, a document was admitted into evidence both as an exhibit for the Plaintiff and as an exhibit for the Defendant.

<u>The Plaintiff's Army Service</u>

3.     On or about March 21, 2007, the Plaintiff enlisted in the Army.  After completion of basic training at Fort Benning, Georgia, the Plaintiff entered into a six-year contract with the Army to be a field artilleryman in the 13 Bravo regiment.  He completed his Advanced Individual Training at Fort Sill, Oklahoma and received his MOS[2] 13B designation as a cannon crewmember.

4.     While serving in MOS 13B, the Plaintiff was deployed to Iraq in 2008 for a twelve-month tour.  Upon his return to Fort Sill, the Plaintiff declined consideration of a promotion within 13 Bravo, because he wanted to reclassify into the 15 Whiskey regiment of unmanned aircraft systems operators.  After completing MOS 15W training at Fort Huachuca, Arizona, during 2012, the Plaintiff became stationed at Fort Wainwright, Alaska.

5.     During 2012, Master Sergeant Hallum was stationed at Fort Wainwright as a Career Counselor.  As the Plaintiff neared the completion of his contract with the Army, he began meeting with Master Sergeant Hallum about a reenlistment contract.  On August 23, 2012, the Plaintiff requested authorization to reenlist in the Army, and the Plaintiff's commander approved this request, determining the Plaintiff fully qualified for reenlistment.[3]

6.     On August 27, 2012, the Plaintiff and Master Sergeant Hallum executed an Enlistment/Reenlistment Document (DD Form 4/1) and a Statements for Enlistment (DA Form 3286) (collectively "Reenlistment Contracts").[4]  The Enlistment/Reenlistment Document contains the following remarks regarding the Plaintiff's reenlistment with the Army:

(1)     REGULAR ARMY REENLISTMENT OPTION (BONUS EXTENSION AND RETRAINING (BEAR) PROGRAM) RCN: 2895167.

---

[2] MOS or Military Occupational Specialty codes are used by the Army to identify specific jobs and careers.

[3] The request for and approval of the Plaintiff's reenlistment in the Army is formally documented in a Request for Reenlistment or Extension in the Regular Army (DA Form 3340-R) executed by the Plaintiff and his commander, Captain Kelly L. Markin, a copy of which was admitted into evidence as part of the Plaintiff's Exhibit A.

[4] Copies of the Reenlistment Contracts were admitted into evidence as part of the Plaintiff's Exhibit A.

> > (2)     SRB A ZONE, MOS 15W, 0 MONTHS PREVIOUSLY OBLIGATED SERVICE, 72 MONTHS NEWLY OBLIGATED SERVICE.
> >
> > (3)     NO WAIVER.
> >
> > (4)     1ST REENLISTMENT.[5]
> >
> > (5)     LUMP SUM PAYMENT AUTHORIZED IAW MILPER MESSAGE 12-195 PARA 4.

The Statements of Enlistment contains the following statement with which the Plaintiff agreed:

> In connection with my reenlistment in the Regular Army for the Regular Army Reenlistment option, I hereby acknowledge that provided I meet required prerequisites I will be assigned as follows: IAW[6] the needs of the Army.

7.     Although the Plaintiff was reenlisted generally in the Regular Army,[7] his assignment remained with MOS 15W.  In exchange for the Plaintiff's agreement to serve for six years in MOS 15W, the Plaintiff received a selective reenlistment bonus ("Bonus") in the amount of $18,200.00.  Pursuant to a Statement of Entitlement to Selective Reenlistment Bonus (DA Form 4789) ("Bonus Contract")[8] executed by the Plaintiff on August 27, 2012, the Plaintiff agreed that if he did not complete the full period of service, then he would become obligated to pay back the unearned portion of the Bonus.  Specifically, the Plaintiff agreed to the following terms with respect to the Bonus (emphases in original):

> I KYLE KENNETH RYAN understand that I am getting a selective reenlistment bonus in return for my reenlistment in MOS 15W for a period of 6 YEARS.  I agree to complete this period of service.
>
> I have been advised and understand that if I do not complete the full period of service, or if I do not remain technically qualified in MOS 15W, I will not get any more installments of the bonus, and I will have to pay back as much of the bonus as I already received for the unexpired part of the period of obligated service.

---

[5] The Plaintiff testified that this was technically his third enlistment in the Army.

[6] IAW is an acronym for "in accordance with."

[7] The term "Regular Army" refers to the full-time active component of the Army as opposed to the Army Reserves and the National Guard.

[8] A copy of the Bonus Contract was admitted into evidence both as the Plaintiff's Exhibit B and as the Defendant's Exhibit 4.

I understand that I will be considered *NOT* technically qualified in MOS 15W when I am no longer classified in that MOS and my current and future assignment in that MOS is precluded for any of the following reasons within my control:

      a.      I refuse to perform certain duties which I volunteered for in writing prior to my accepting the bonus and which are required for effective performance in the MOS;

      b.      Disciplinary action taken under UCMJ[9] or civil court conviction disqualifies me for future performance in the MOS;

      c.      My own misconduct causes injury, illness, or some other condition which interferes with effective performance in the MOS;

      d.      Withdrawal of the minimum security clearance, loss of qualification under the Personnel Reliability Program (*PRP*), or loss of any other mandatory qualification required for effective performance in the MOS.

8.      In connection with the Plaintiff's execution of the Bonus Contract, Master Sergeant Hallum counseled the Plaintiff about the technical qualifications for service in MOS 15W. Those qualifications are specifically recited in the Department of the Army Pamphlet 611-21, commonly known as the "MOS Smartbook." Master Sergeant Hallum did not provide the Plaintiff with a copy of this pamphlet, but the parties agree that the Plaintiff was generally familiar with the technical qualifications for MOS 15W, and that these qualifications include possession of an "upslip," which is a medical recommendation that the service member is fit for flight duty.

9.      In or around September, 2012, the Plaintiff received net payment from the Army in the amount of $12,558.00, which represented the Bonus in the gross amount of $18,200.00 less withholdings for income taxes, FICA[10] contributions, and other benefits.

---

[9] UCMJ is an acronym for the Uniform Code of Military Justice.

[10] FICA is an acronym for the Federal Insurance Contribution Act, 26 U.S.C. § 3101 *et seq.*, pursuant to which both employers and employees contribute a percentage of an employee's income to fund Social Security and Medicare.

10.     Around May, 2013, the Plaintiff ingested Vicodin, an opiate painkiller containing a combination of hydrocodone and acetaminophen, which was prescribed to his wife.  The Plaintiff testified that he took the Vicodin to relieve pain from a neck injury sustained during a training exercise and did not want to report the injury due to fear of losing his upslip to fly military drones. The day after the Plaintiff ingested the Vicodin, the Army administered a random urinalysis screening to the Plaintiff.

11.     On August 21, 2013, the Plaintiff learned that his urinalysis was positive for hydrocodone.  On August 22, 2013, the Plaintiff participated in event-oriented counseling with Sergeant Paul Boyer regarding the positive urinalysis.   The Plaintiff received a temporary "downslip," removing him from flight status and was directed to enroll in the Army Substance Abuse Program ("ASAP").  Sergeant Boyer advised the Plaintiff that the Army was in the process of separating the Plaintiff from military service pending court-martial, and the Plaintiff may not be allowed to continue his military career as an unmanned aerial systems operator due to the potential loss of security pending court-martial.[11]

12.     After the Plaintiff's event-oriented counseling, the Plaintiff received a memorandum[12] from Captain Erin A. Stevens.   The memorandum included the following statements (emphasis in original):

> 1.     Under the provisions of AR 635-200,[13] Chapter 14-12c(2), I am initiating action to separate you for Misconduct-Abuse of Illegal Drugs.  The reasons for my proposed action are:  You committed a serious offense for which the specific circumstances of the offense warrant separation and a punitive discharge is, or would be, authorized for the same or closely related offense under the MCM.[14]

---

[11] A full summary of the event-oriented counseling is contained within a Developmental Counseling Form (DA Form 4856), a copy of which was admitted into evidence both as the Plaintiff's Exhibit I and as the Defendant's Exhibit 14.

[12] A copy of this undated memorandum was admitted into evidence as the Plaintiff's Exhibit H.

[13] Army Regulation 635-200 is titled "Active Duty Enlisted Administrative Separations."

[14] MCM is an acronym for the Manual for Courts-Martial.

Specifically, between 20 May 2013 and 23 May 2013 you wrongfully used hydrocodone and hydromorphone.

2.      I am recommending that your service be characterized as **General, Under Honorable Conditions.**

. . .

5.      If my recommendation is approved, the proposed separation could result in discharge, release from active duty to a reserve component, or release from custody and control of the Army.

. . .

9.      You are entitled to a hearing before an administrative board if you have six or more years of active and reserve military service at the time separation is initiated.

. . .

13.      If applicable, recoupment of the unearned portion of your enlistment or reenlistment bonus is required by law (37 USC 308).

13.      Brian T. Gordon, Senior Counselor with ASAP, conducted an initial intake assessment of the Plaintiff on September 4, 2013.  Mr. Gordon consulted with First Sergeant Richard Phebus, and they agreed not to enroll the Plaintiff in ASAP, because the Plaintiff had two prior enrollments.[15]  Regulations for re-enrollment require "extraordinary conditions," which did not exist in this case.[16]

14.      On October 3, 2013, Captain Stevens issued a Request for Preparation of a Legal Action[17] which formally requested that the Plaintiff be separated from the Army.  This document details the basis for the separation request as:  "Pattern of Substance Abuse culminating with the

---

[15] Neither party provided evidence detailing the specifics of the Plaintiff's prior enrollments in ASAP.
[16] The results of Mr. Gordon's assessment are recorded within an Army Substance Abuse Program (ASAP) Enrollment (DA Form 8003) dated September 4, 2013, a copy of which was admitted into evidence both as the Plaintiff's Exhibit J and as the Defendant's Exhibit 15.
[17] A copy of the Request for Preparation of a Legal Action was admitted into evidence both as the Plaintiff's Exhibit N and as the Defendant's Exhibit 18.

most recent failed urinalysis for 2 x substances.  [The Plaintiff] has been enrolled in ASAP twice previously, once in 2007 and once in 2010.  ASAP will not re-enroll due to prior enrollments."

15.     As part of the Army's separation process and procedures, the Plaintiff received a medical examination and assessment at Kamish Health Clinic at Fort Wainwright on October 8, 2013.  A Report of Medical Assessment (DD Form 2697)[18] signed by Ronald S. Dunston, PA-C indicates that the Plaintiff was "in good health."  A Report of Medical Examination (DD Form 2808)[19] also signed by Mr. Dunston states that the Plaintiff was "fully qualified for service IAW AR 40-501.[20]  He is medically cleared to proceed with chapter [discharge]."

16.     The Plaintiff appealed Captain Stevens' recommendation for his separation from the Army.  The Plaintiff appeared at a hearing before an administrative board, which denied the appeal.[21]

17.     On March 26, 2014, the Plaintiff received a discharge ("Military Discharge") from active duty with the Army under honorable conditions.  A Certificate of Release or Discharge from Active Duty (DD Form 214)[22] provides that the reason for the Military Discharge was "Misconduct (Serious Offense)."

18.     At the time of the Military Discharge, the Plaintiff had served nineteen months of his six-year reenlistment period, leaving fifty-three months unserved.  The Defendant determined that the unearned portion of the Bonus attributable to the unserved months ("Unearned Bonus") was $13,397.23.

---

[18] A copy of the Report of Medical Assessment was admitted into evidence both as the Plaintiff's Exhibit K and as the Defendant's Exhibit 16.
[19] A copy of the Report of Medical Examination was admitted into evidence as the Plaintiff's Exhibit M.
[20] Army Regulation 40-501 is titled "Standards of Medical Fitness."
[21] The Plaintiff was never court-martialed.
[22] A copy of the Certificate of Release or Discharge from Active Duty was admitted into evidence both as the Plaintiff's Exhibit C and as the Defendant's Exhibit 5.

19.    At the time of the Military Discharge, the Plaintiff had accrued thirty-four days of unused administrative leave. The Defendant applied this unused leave by crediting the Plaintiff for "Lump Sum Leave" in the amount of $2,750.94.[23]

20.    The Defendant withheld $4,407.59 from the Plaintiff's final pay and applied it to the amount of the Unearned Bonus, leaving a balance of $8,989.64. Subsequently, the Defendant began billing the Plaintiff for this amount, including interest. The Defendant also billed the Plaintiff for the amount of $669.51 for government property allegedly lost by the Plaintiff.

<u>The Plaintiff's Bankruptcy Proceeding</u>

21.    On May 12, 2015, the Plaintiff filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code ("Bankruptcy Code"). In his Schedule F – Creditors Holding Unsecured Nonpriority Claims, the Plaintiff scheduled the Defendant as a creditor with a "disputed" claim ("Claim") in the amount of $9,667.21. On August 7, 2015, the Plaintiff filed a Proof of Claim on behalf of the Defendant for the amount of $9,667.21.

22.    On August 7, 2015, the Plaintiff initiated this adversary proceeding by filing a Complaint against the Defendant. In the Complaint, the Plaintiff first requests the court to determine that the Claim is not excepted from a Chapter 7 discharge ("Dischargeability Determination"). The Plaintiff next objects to the Claim as being unsubstantiated ("Claim Objection").

23.    On October 7, 2015, the Defendant filed an Answer of the Defense Finance and Accounting Service. The Defendant asserts that the Claim is excepted from a Chapter 7 discharge

---

[23] The Plaintiff's Lump Sum Leave is reflected in a Defense Finance and Accounting Service Military Leave and Earnings Statement for the period March 1, 2014 to March 26, 2014, a copy of which was admitted into evidence both as the Plaintiff's Exhibit G and as the Defendant's Exhibit 12.

pursuant to 37 U.S.C. § 303a(e)(4), a federal statute not included within the Bankruptcy Code.  In addition, the Answer provides an accounting of the Defendant's Claim.

24.    On November 9, 2015, the Plaintiff received his Chapter 7 discharge ("Bankruptcy Discharge") pursuant to 11 U.S.C. § 727(a).

25.    On January 28, 2016, the Defendant filed a Motion for Summary Judgment in Adversary Proceeding.[24]  The Defendant's supporting Memorandum contained a declaration of Mr. Campbell that that the amount of the Claim was $9,765.16 which equals the Unearned Bonus balance of $8,989.64 plus interest of $106.01 and plus $669.51 for the alleged property loss.  On February 18, 2016, the Defendant filed its own Proof of Claim for the amount of $9,765.14.[25]

26.    On February 17, 2016, the Plaintiff filed an Objection to Defendant's Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment.  On April 8, 2016, the court entered an Order Denying Motions for Summary Judgment, in which it held that:

> [r]esolution of the Claim Objection requires findings of fact beyond the undisputed facts that are currently before the court; therefore, neither party is entitled to summary judgment on the Claim Objection.  As a result of the court's inability to rule on the Claim Objection, consideration of the Dischargeability Determination is premature . . . .

*Ryan v. U.S. Fin. and Accounting Serv.*, Adversary Proceeding No. 15-00081 (Bankr. E.D.N.C. April 8, 2016).

27.    At the trial, the Defendant amended orally its Claim to the amount of $8,989.64, conceding that the Plaintiff's alleged indebtedness for property loss is dischargeable and waiving any right to interest on the Unearned Bonus.  The Plaintiff, while maintaining its position that the

---

[24] Prior to moving for summary judgment, on October 19, 2015, the Defendant filed a Motion to Dismiss Adversary Proceeding, and on November 2, 2015, the Plaintiff filed an Objection to Defendant's Motion to Dismiss Complaint.  On January 28, 2016, the court entered an Order Denying Motion to Dismiss which denied the Defendant's Motion to Dismiss for not being filed timely pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

[25] A difference of $0.02 exists between the Proof of Claim amount and the amount stated in the Memorandum.

entire Claim is dischargeable, asserted that the Claim should only be allowed for the amount of
$3,815.31.

## CONCLUSIONS OF LAW

### Jurisdiction

This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (I) , and the
court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. *See*, *e.g.*, *Kelly v. U.S. Dept.
of Educ. (In re Kelly)*, 548 B.R. 99, 101 (Bankr. E.D.N.C. 2016) (citation omitted) (noting action
to determine dischargeability of a debt is a core proceeding); *Reed v. Zwick (In re Reed)*, 559 B.R.
194, 201 (Bankr. N.D. Ohio 2016) (holding that even in a no-asset Chapter 7 proceeding, the court
has jurisdiction to determine the allowance of a claim against the estate when directly related to
dischargeability).  The court has the authority to hear this matter pursuant to the General Order of
Reference entered on August 3, 1984 by the United States District Court for the Eastern District
of North Carolina.

### Claim Objection

The court will begin by addressing the Claim Objection, because if the Defendant's Claim
is disallowed, then the Dischargeability Determination becomes unnecessary.  The Plaintiff first
asserts that the contracts between the Plaintiff and the Army, coupled with applicable laws and
regulations, do not support recoupment of the Unearned Bonus.  Alternatively, the Plaintiff argues
that even if the Defendant is entitled to repayment, the Defendant did not properly calculate the
amount of the Unearned Bonus, and the amount of the Claim should be reduced to $3,815.31.

### *Breach of Contract*

On August 27, 2012, the Plaintiff entered into three separate written contracts with the
Army:  the two Reenlistment Contracts and the Bonus Contract.  The court agrees with the Plaintiff

11

that the Plaintiff's obligation to repay the Unearned Bonus is principally a matter of contract law; however, the court acknowledges that laws concerning payment of military bonuses are codified in 37 U.S.C. § 301 *et seq.* entitled "Special and Incentive Pay."

The Bonus Contract cites 37 U.S.C. § 308 as the controlling authority for that contract. This section authorizes payments of a reenlistment bonus and provides that—

> [a] member who does not complete the term of enlistment for which a bonus was paid to the member under this section, *or* a member who is not technically qualified in the skill for which a bonus was paid to the member under this section, shall be subject to the repayment provisions of section 303a(e) of this title.

37 U.S.C. § 308(d) (emphasis added). The Bonus Contract essentially mirrors 37 U.S.C. § 308(d) with the Plaintiff agreeing as follows (emphasis added):

> I have been advised and understand that if I do not complete the full period of service, *or* if I do not remain technically qualified in MOS 15W . . . I will have to pay back as much of the bonus as I already received for the unexpired part of the period of obligated service.

The use of the word *or* in both the Bonus Contract and 37 U.S.C. § 308(d) establishes that the conditions of retaining the Bonus are disjunctive, and the Plaintiff's failure to complete the term of reenlistment alone obligates him to repay the Unearned Bonus. A determination of whether the Plaintiff is not technically qualified in MOS 15W becomes relevant only if he is continuing to serve under the terms of the Reenlistment Contracts and the Bonus Contract.

Despite the unambiguous language of the Bonus Contract and of the applicable statutory provision, the Plaintiff proffers that he did not voluntarily breach the Bonus Contract, because only the Army's unilateral decision to issue the Military Discharge prevented him from completing service under the Reenlistment Contracts. The Reenlistment Contracts did not require the Plaintiff's service in MOS 15W but obligated the Plaintiff to serve in the Regular Army in accordance with the Army's needs. The Plaintiff contends, and Master Sergeant Hallum agrees,

that in response to the Plaintiff's misconduct, the Army could have chosen to reclassify the Plaintiff from MOS 15W to another position rather than discharging him from the Army, thereby enabling him to fulfill his six-year service obligation under the Reenlistment Contracts. The Plaintiff further argues that despite the issuance of the *temporary* downslip from flight status, which was could have been withdrawn, the Plaintiff remained technically qualified and willing to serve in MOS 15W. In support of the contention that he was technically qualified for MOS 15W, the Plaintiff emphasizes that the results of his medical assessments performed during the discharge proceedings established that he was fit for duty.

The court rejects the Plaintiff's position that the involuntary nature of the Military Discharge prevents him from being in breach of the Bonus Contract. Although the Army could have reclassified the Plaintiff within the Regular Army, it was not obligated to do so. The Army's discharge proceedings against the Plaintiff for what the Army considers a serious misconduct are well-documented, and the Plaintiff was allowed an administrative appeal. The Plaintiff did not present evidence that he requested reclassification at any time during the discharge proceedings.

Even if the Army had reclassified the Plaintiff, the Bonus is specifically conditioned upon the Plaintiff's service in MOS 15W. In the Bonus Contract, the Plaintiff agrees as follows (emphasis added): "I Kyle Kenneth Ryan understand that I am getting a selective reenlistment bonus *in return for my reenlistment in MOS 15W* for a period of 6 years." The Bonus Contract was purposefully separate from the Reenlistment Contracts, and payment of the Bonus was conditioned upon the Plaintiff serving for six years in MOS 15W. The Plaintiff did not complete the contracted six years in MOS 15W, and regardless of the reason for the Plaintiff's failure to serve, the Plaintiff is contractually obligated to repay the Unearned Bonus. Although it is not necessary for the court to decide whether the Plaintiff remained technically qualified in MOS 15W,

the court suspects that he did not. The Plaintiff's voluntary ingestion of Vicodin is likely a misconduct that a caused a condition, specifically the removal of the Plaintiff's upslip, which interfered with effective performance in MOS 15W within the meaning of the Bonus Contract.

*Statutory and Regulatory Forgiveness of Repayment Obligations*

As directed in 37 U.S.C. § 308(d), repayment of unearned portions of military bonuses is governed by 37 U.S.C. § 303a(e) which states in part:

> (A) Except as provided in paragraphs (2) and (3), a member of the uniformed services who receives a bonus or similar benefit and whose receipt of the bonus or similar benefit is subject to the condition that the member continue to satisfy certain eligibility requirements shall repay to the United States an amount equal to the unearned portion of the bonus or similar benefit if the member fails to satisfy the eligibility requirements and may not receive any unpaid amounts of the bonus or similar benefit after the member fails to satisfy the requirements, *unless the Secretary concerned determines that the imposition of the repayment requirement and termination of the payment of unpaid amounts of the bonus or similar benefit with regard to the member would be contrary to personnel policy or management objective, would be against equity and good conscience, or would be contrary to the best interest of the United States.*
>
> (B) The Secretary concerned may establish, by regulations, procedures for determining the amount of the repayment required under this subsection and the circumstances under which an exception to the required repayment may be granted. The Secretary concerned may specify in the regulations the conditions under which an installment payment of a bonus or similar benefit to be paid to a member of the uniformed services will not be made if the member no longer satisfies the eligibility requirement for the bonus or similar benefit. For the military departments, this subsection shall be administered under regulations prescribed by the Secretary of Defense.

37 U.S.C. § 303a(e)(1) (emphasis added). Paragraphs (2) and (3) of 37 U.S.C. § 303a(e) provide respectively that the Secretary concerned shall not require repayment of an unearned bonus from a military service member who receives a "soul survivor discharge," as that term is defined within the statute, or who dies or is retired or separated with a combat-related disability. Neither of these exceptions applies to the Defendant's ability to seek repayment of the Unearned Bonus.

14

The applicable regulations ("Regulations") for the administration of 37 U.S.C. § 303a(e) are set forth in the Department of Defense's Financial Management Regulation (DoD 7000.14), specifically Volume 7A, Chapter 2 titled "Repayment of Unearned Portion of Bonuses and Other Benefits." The Regulations, as they existed at the time of the Plaintiff's Military Discharge, describe a service member's entitlement to a bonus or benefit as follows:

> A member of the uniformed services who enters into a written agreement with specified service conditions for receipt of a bonus, special or incentive pay, educational benefits, stipend, or similar payment (hereinafter referred to as "pay or benefit"), is entitled to the full amount of the pay or benefit if the member fulfills the conditions of that pay or benefit. If the member fails to fulfill the service conditions specified in the written agreement for the pay or benefit, then the pay or benefit may be terminated and the member may be required to repay an amount equal to the unearned portion of the pay or benefit. *Such repayment will be pursued unless the member's failure to fulfill the specified conditions is due to circumstances determined reasonably beyond the member's control*. Conditions under which repayment will not be sought are set forth in section 0202.

DoD 7000.14-R, Volume 7A, Chap. 2 § 020101 (July 2013) (emphasis added). The Regulations also address conditions under which repayment will not be sought and provide that—

> [a]s a general rule, *repayment action will not be pursued in situations in which the member's inability to fulfill specified service conditions related to a pay or benefit is due to circumstances determined reasonably beyond the member's control*. Payment of any unpaid portion of pay or benefit will be subject to the rules in Table 2-1, which *in appropriate circumstances* provide *discretion to the Secretary of the Military Department concerned* to pay unearned portions based on case-by-case determinations.

DoD 7000.14-R, Volume 7A, Chap. 2 § 020203 (July 2013) (emphases added). This section lists numerous conditions under which repayment of an unearned bonus will not be sought, including death of the service member, separation due to a combat-related disability, transfer to another military department for which no bonus is paid, or one of the following four conditions:

> 1.    The member's employment in another military specialty or assignment is directed;

> 2.      The member's military specialty or assignment is phased out or eliminated;
>
> 3.      The member's military specialty or assignment is otherwise affected by force structure or other mission-essential requirements; or
>
> 4.      The member is separated from service under a hardship separation or sole survivor discharge.

*Id.*

Beyond the specific conditions under which repayment of an unearned bonus will not be sought, the Regulations allow broad discretion to waive collection of an unearned bonus:

> Under circumstances not specifically mentioned in this chapter, the Secretary of the Military Department concerned has the discretion to, at some point in the process, render a case-by-case determination that the member's repayment of . . . a pay or benefit is [in]appropriate based on the following:
>
> 1.      Contrary to a personnel policy or management objective,
>
> 2.      Against equity and good conscience, or
>
> 3.      Contrary to the best interest of the United States.

*Id.*

Mr. Campbell testified that the applicable military department, not the Defendant, makes the determination under the guidance of the Regulations of whether a service member's obligation to repay the unearned portion of a bonus should be waived or forgiven under 37 U.S.C. § 303a(e)(1).  In the Plaintiff's case, the Army could have considered forgiveness of his obligation to repay the Unearned Bonus in connection with the discharge proceedings.  While there is no record of the Army making a deliberate choice not to waive repayment of the Unearned Bonus, Mr. Campbell stated that the referral of the Unearned Bonus to the Defendant for collection evidences that the Army chose not to waive the obligation.  This action is consistent with the Regulations providing that "the Secretary of the Military Department concerned will advise the

16

Defense Finance and Accounting Service of the disposition of any unearned portion of a pay or benefit."  DoD 7000.14-R, Volume 7A, Chap. 2 § 020201 (July 2013).

Mr. Campbell further testified that upon receipt of a request to collect an unearned bonus from a service member, the Defendant uses Table 2-1 of the Regulations to audit the repayment obligation.  Table 2-1 is a flowchart-type guide to "Disposition of Unearned Portions of Bonuses, Special Pay, Educational Benefits, or Stipends."  With respect to the Plaintiff's situation, Table 2-1 instructs as follows:

> If a member under a written agreement for a pay or benefit
>
> . . .
>
> [d]oes not fulfill the service conditions for the pay or benefit under any other circumstances
>
> . . .
>
> then repayment of the unearned portion of the pay or benefit
>
> . . .
>
> will be sought, *unless Secretary of the Military Department concerned, at some point in the process makes a case-by-case determination that to require repayment of an unearned portion of the pay or benefit would be contrary to a personnel policy or management objective, against equity or good conscience or contrary to the best interest of the United States*

DoD 7000.14-R, Volume 7A, Chap. 2, Table 2-1 (July 2013) (emphasis added).

The Plaintiff, focusing on the subjective language contained within the statutes and the Regulations as emphasized *supra*, overcomplicates the court's analysis by arguing that no clear guidance exists for making proper and consistent determinations of what type of conduct warrants a waiver or forgiveness of a service member's obligation to repay an unearned bonus.  The Plaintiff urges the court to find that the Plaintiff's breach of the Bonus Contract resulted from a substance abuse problem which was reasonably beyond the Plaintiff's control, thereby justifying waiver of

17

its his obligation to repay the Unearned Bonus. The Plaintiff attempted to draw an analogy between unspecified incidences where homosexuality is considered beyond a service member's control. The court initially found this analogy logical and persuasive; however, as explained *infra*, the Regulations suggest that personal situations are not the intended types of circumstances beyond a service member's control that would support waiving collection of an unearned bonus.

Judicial review of a regulatory decision made by an agency of the United States is allowed pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.* Although the Plaintiff's Complaint did not specifically seek relief under the APA, and this court's jurisdiction under the APA is questionable,[26] the court will infer this request through the Plaintiff's arguments made in support of its Claim Objection. Under the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). This district finds that—

> [i]n reviewing agency action, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1335 (4th Cir. 1995) (quotation omitted); *see Motor Vehicle Mfrs. Ass'n of the U.S. Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S.29, 43, 103 S. Ct. 2856, 77 L.Ed.2d 443 (1983). The "inquiry into the facts is to be searching and careful," but "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Babbitt*, 66 F.3d at 1335 (quotation omitted).

*Hoffler v. Hagel*, 122 F. Supp.3d 438, 446 (E.D.N.C. 2015).

---

[26] The court suspects that judicial review of the Army's decision not to waive collection of the Unearned Bonus should have been sought by the Plaintiff immediately after receiving the Military Discharge, rather than as part of the Claim Objection. In a similar case adjudicating dischargeability of an unearned military bonus, the United States Bankruptcy Court for the Eastern District of California pondered that "[a]n interesting question that can be left for another day is whether a bankruptcy court could review (presumably after exhaustion of administrative remedies) whether repayment would, for example, be "against equity and good conscience" within the meaning of [37 U.S.C. § 303a(e)(1)]." *In re Fagan*, 559 B.R. 718, 723 (Bankr. E.D. Cal. 2016).

The Regulations' examples of conditions under which repayment of an unearned bonus will not be sought are situations that are clearly beyond a service member's control and do not involve any type of misconduct by the service member.  None of these conditions exists in connection with the Plaintiff's Military Discharge.  Certainly, the Department of Defense did not envision substance abuse, a serious misconduct which is cause for discharge, to qualify as a condition reasonably beyond a service member's control within the meaning of the Regulations. The court notes that the Plaintiff's suggestion that he had a substance abuse problem which was beyond his control is inconsistent with his testimony that he took his wife's Vicodin in response to a specific injury causing him pain.  The court can find no evidence that the Army abused its discretion in declining to make an exception for the Plaintiff who was admittedly discharged from the Army for a misconduct.  The Plaintiff has not produced sufficient grounds to warrant the court overruling the Army's failure to waive collection of the Unearned Bonus.

*Computation of the Amount of the Claim*

The Regulations set forth the following procedure for determining the amount of an unearned bonus to be repaid:

> Repayment is required on a percentage basis for the time remaining to be served. Divide the amount of the bonus paid by the number of months for which the bonus is payable.  This is the bonus amount per month.  Multiply this number by the number of months and fractions of months not served (including lost time, unless such lost time has been made up).  This is the amount to be recouped.

DoD 7000.14-R, Volume 7A, Chap. 9 § 090210 (August 2012).  In accordance with this provision, the Defendant calculated the amount of the Unearned Bonus and Claim as follows:

| | |
|---|---|
| Gross Reenlistment Bonus | $18,200.00 |
| Divided by (÷) 2,160 days of reenlistment period | |
| Equals (=) Reenlistment Bonus daily rate | $8.42593 |
| Times (x) 1,590 unserved days | |
| Equals (=) Unearned Bonus | $13,397.23 |
| Minus (-) Earnings Setoff | ($4,407.59) |
| Equals (=) Claim | $8,989.64 |

The Plaintiff disputes multiple portions of the Defendant's calculation of the Unearned Bonus and the Claim and asserts that they should be computed as follows:

| | |
|---|---|
| Net Reenlistment Bonus | $12,558.00 |
| Divided by (÷) 2,190 days of reenlistment period | |
| Equals (=) Reenlistment Bonus daily rate | $5.73424 |
| Times (x) 1,434 unearned days (1,614 days unserved less 180 leave days) | |
| Equals (=) Unearned Bonus | $ 8,222.90 |
| Minus (-) Earnings Setoff | ($4,407.59) |
| Equals (=) Claim | $3,815.31 |

The Plaintiff first submits that computation of the amount of the Unearned Bonus to be repaid should be based upon the *net* amount of $12,558.00 directly paid to the Plaintiff rather than the *gross* amount of $18,200.00. In support of this theory, the Plaintiff focuses on the use of the word "receive," in its various forms, within 37 U.S.C. § 303a(e) and argues that the Plaintiff only received $12,558.00. The Defendant counters that regardless of the amount paid directly to the Plaintiff, the Plaintiff received the benefit of the entire amount of the Bonus, and it would be a windfall for the Plaintiff to only be required to repay the unearned portion of the net amount of the Bonus.

The amount of the Bonus withheld from payment to the Plaintiff was paid by the Defendant toward the Plaintiff's income taxes and FICA contributions. With respect to the income taxes, this exact issue was long-ago settled by the United States Supreme Court in *United States v. Lewis*, 340 U.S. 590, 71 S. Ct. 522, 95 L.Ed. 560 (1951). In *Lewis*, the respondent reported on his 1944 income tax return approximately $22,000.00 received as a bonus from his employer. In 1946, the

20

respondent returned $11,000.00 to his employer after a state court entered judgment finding that the amount of the bonus had been improperly computed.  The respondent sued the United States of America for a refund of the amount of overpayment of his 1944 income tax resulting from the bonus.  The government countered that the respondent's 1944 tax liability should not be recomputed.  Rather, the respondent should have deducted the $11,000.00 repayment as a loss in his 1946 tax return.

The Supreme Court agreed with the government, reiterating its prior holding that "[i]f a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." *Id.* at 591, 71 S. Ct. at 523, 95 L.Ed. 560 (quoting *North American Oil Consolidated v. Burnet*, 286 U.S. 417, 424, 52 S. Ct. 613, 615, 76 L.Ed. 1197 (1932)).  In *Lewis*, the Court found no exception merely because a taxpayer is "mistaken" as to the validity of his claim.  The Court concluded that "[i]ncome taxes must be paid on income received (or accrued) during an annual accounting period.  The 'claim of right' interpretation of the tax laws has long been used to give finality to that period, and is now deeply rooted in the federal tax system." *Id.* at 592, 71 S. Ct. at 523, 95 L.Ed. 560 (citations omitted).

In response to *Lewis*, Congress enacted a statue within the United States Tax Code which allows taxpayers who have to pay back income paid during a previous tax year to either take a deduction in the year the money was repaid or take a tax credit equal to the amount of the taxes originally paid on that amount:

If—

    (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

    (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

    (3) the amount of such deduction exceeds $3,000,

then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

    (4) the tax for the taxable year computed with such deduction; or

    (5) an amount equal to—

        (A) the tax for the taxable year computed with such deduction, minus

        (B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

26 U.S.C. § 1341. This law is referenced in the Defendant's DFAS Form 705 issued to a service member who receives an overpayment and is succinctly summarized in the Internal Revenue Service's annual Publication 525 for use in preparing tax returns titled "Taxable and Nontaxable Income" as follows:

If you had to repay an amount that you included in your income in an earlier year, you may be able to deduct the amount repaid from your income for the year in which you repaid it. Or, if the amount you repaid is more than $3,000, you may be able to take a credit against your tax for the year in which you repaid it. In most cases, you can claim a deduction or credit only if the repayment qualifies as an expense or loss incurred in your trade or business or in a for-profit transaction.

Internal Revenue Service, Publication 525, p. 34 (2016).

    Both *Lewis* and 26 U.S.C. § 1341 support the Defendant's position that in computing the Unearned Bonus, the Plaintiff is not entitled to a credit for the amount of income taxes paid on the

Bonus.  The Plaintiff should also not receive a credit for any other withholdings such as FICA or insurance as the Plaintiff has or will in the future receive these benefits, and repayment of the gross amount of the Unearned Bonus will not result in a deduction of funds available in the Plaintiff's Social Security and Medicare accounts.

The Plaintiff disputes the Defendant's computation of the per diem rate of the Bonus based upon a six-year period calculated to be 2,160 days rather than 2,190 days.  At the time of the Military Discharge, the Plaintiff had served nineteen months of his six-year reenlistment period, leaving fifty-three months unserved.  Mr. Campbell testified that for accounting purposes, the Defendant assigns thirty days per each month or 360 days per calendar year; therefore, six years equals 2,160 days.  The Plaintiff instead multiplied the standard 365 days in a year by six which equals 2,190 days.[27]  Prorating fifty-three unserved months of 360-day year yields 1,590 unserved days and of a 365-day year results in 1,612 unserved days.  The court is puzzled as to why the Plaintiff made such an issue, as the end result is negligible when both methods are applied to the gross amount of the Bonus which the court determined *supra* to be the appropriate starting point:

Defendant's Method
$18,200.00 ÷ 2,160 = $8.42593 x 1,590 = $13,397.23

Plaintiff's Method
$18,200.00 ÷ 2,190 = $8.31050 x 1,612 = $13,396.52

Following the specific language of the Regulations, the Unearned Bonus should actually be computed based upon a per month rather than a per diem rate, which yields a result that is only one cent less than the Defendant's per diem calculation:

---

[27] This does not take into account either 1 or 2 leap days that would occur during a six-year time period.

| Gross Reenlistment Bonus | $18,200.00 |
|---|---|
| Divided by (÷) 72 Months of Reenlisted Period | |
| Equals (=) Reenlistment Bonus Monthly Rate | $252.77778 |
| Times (x) 53 Unserved Months | |
| Equals (=) Unearned Bonus | $13,397.22 |

Finally, the Plaintiff makes the equitable argument that he should be credited for 180 days of service as a result of unused leave. The Plaintiff testified that he was entitled to thirty days paid leave per calendar year or 180 days for the six-year enlistment period. The Plaintiff did not use any of his leave prior to the Military Discharge and requests that 180 days of service not be included in the computation of the Unearned Bonus. The Defendant countered that the annual leave was not pre-earned. The Plaintiff only had thirty-four days of available leave at the time of the Military Discharge, and as reflected in the Plaintiff's final leave and earnings statement, this leave was paid as part of the Plaintiff's final compensation. The Plaintiff provided no evidence to support his claim that he should be credited for additional leave in the calculation of the Unearned Bonus.

*Burden of Proof*

Pursuant to 11 U.S.C. § 502(a) and Rule 3001(f) of the Federal Rules of Bankruptcy Procedure, a proof of claim is presumed valid unless objected to by a party in interest. The United States Court of Appeals for the Fourth Circuit explained the burden-shifting effect of a claim objection as follows:

> The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. The burden then shifts to the debtor to object to the claim. The debtor must introduce evidence to rebut the claim's presumptive validity. If the debtor carries its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence.

*In re Nussman*, 51 B.R. 297, 300-01 (Bankr. E.D.N.C. 2013) (quoting *Stancill v. Harford Sands, Inc. (In re Harford Sands, Inc.)*, 372 F.3d 637, 640 (4th Cir. 2004) (citations omitted)).

The Plaintiff raised sufficient arguments to question the Plaintiff's obligation to repay the Unearned Bonus; however, the Defendant proved by a preponderance of the evidence that the Plaintiff is contractually and statutorily obligated to repay the Unearned Bonus, and that the Defendant properly computed the amount of the Unearned Bonus and the Claim in accordance with the Regulations. The court overrules the Claim Objection and allows the Defendant's Claim for the amount of $8,989.64. The court must now determine whether this Claim is non-dischargeable pursuant to 37 U.S.C. § 303a(e)(4).

Dischargeability Determination

Bankruptcy courts are frequently requested to adjudicate issues related to a bankruptcy case which are based upon "applicable nonbankruptcy law," a phrase that appears numerous times throughout the Bankruptcy Code. In core proceedings, as that term is defined by 28 U.S.C. § 157(b), the court relies predominantly upon the Bankruptcy Code and interpretive case law for guidance. Very few bankruptcy matters, if any, are more core than determinations of entitlement to a discharge and dischargeability of an indebtedness, as these determinations are fundamental to a debtor's "fresh start." While it would be more convenient and better conceived if Congress included all exceptions to discharge in the designated provisions of the Bankruptcy Code, other non-dischargeability provisions live outside of Title 11.

The Bankruptcy Code provides that "*[e]xcept as provided in section 523* . . . [a Chapter 7 discharge] discharges the debtor from all debts that arose before the date of the order for relief . . . ." 11 U.S.C. § 727(b) (emphasis added). Section 523[28] contains an extensive list of the types of

---

[28] A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1)  for a tax or a customs duty—

    (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

    (B) with respect to which a return, or equivalent report or notice, if required—

---

       (i) was not filed or given; or

       (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

     (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

     (B) use of a statement in writing—

       (i) that is materially false;

       (ii) respecting the debtor's or an insider's financial condition;

       (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

       (iv) that the debtor caused to be made or published with intent to deceive; or

     (C) (i) for purposes of subparagraph (A)—

       (I) consumer debts owed to a single creditor and aggregating more than $675[1] for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable; and

       (II) cash advances aggregating more than $950[1] that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 70 days before the order for relief under this title, are presumed to be nondischargeable; and

      (ii) for purposes of this subparagraph—

       (I) the terms "consumer", "credit", and "open end credit plan" have the same meanings as in section 103 of the Truth in Lending Act; and

       (II) the term "luxury goods or services" does not include goods or services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor;

(2) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

     (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

     (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(5) for a domestic support obligation;

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

     (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

     (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

     (A) (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

       (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

     (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

(9) for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance;

(10) that was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title or under the Bankruptcy Act in which the debtor waived discharge, or was denied a discharge under section 727(a)(2), (3), (4), (5), (6), or (7) of this title, or under section 14c(1), (2), (3), (4), (6), or (7) of such Act;

(11) provided in any final judgment, unreviewable order, or consent order or decree entered in any court of the United States or of any State, issued by a Federal depository institutions regulatory agency, or contained in any

debts that are excepted from a discharge granted to an individual debtor, and the parties agree that none of these exceptions applies to the Claim.    Outside of the Bankruptcy Code, however, Congress legislated that—

---

settlement agreement entered into by the debtor, arising from any act of fraud or defalcation while acting in a fiduciary capacity committed with respect to any depository institution or insured credit union;

(12) for malicious or reckless failure to fulfill any commitment by the debtor to a Federal depository institutions regulatory agency to maintain the capital of an insured depository institution, except that this paragraph shall not extend any such commitment which would otherwise be terminated due to any act of such agency;

(13) for any payment of an order of restitution issued under title 18, United States Code;

(14) incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1);

(14A) incurred to pay a tax to a governmental unit, other than the United States, that would be nondischargeable under paragraph (1);

(14B) incurred to pay fines or penalties imposed under Federal election law;

(15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit;

(16) for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case;

(17) for a fee imposed on a prisoner by any court for the filing of a case, motion, complaint, or appeal, or for other costs and expenses assessed with respect to such filing, regardless of an assertion of poverty by the debtor under subsection (b) or (f)(2) of section 1915 of title 28 (or a similar non-Federal law), or the debtor's status as a prisoner, as defined in section 1915(h) of title 28 (or a similar non-Federal law);

(18) owed to a pension, profit-sharing, stock bonus, or other plan established under section 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code of 1986, under—

(A) a loan permitted under section 408(b)(1) of the Employee Retirement Income Security Act of 1974, or subject to section 72(p) of the Internal Revenue Code of 1986; or

(B) a loan from a thrift savings plan permitted under subchapter III of chapter 84 of title 5, that satisfies the requirements of section 8433(g) of such title;

but nothing in this paragraph may be construed to provide that any loan made under a governmental plan under section 414(d), or a contract or account under section 403(b), of the Internal Revenue Code of 1986 constitutes a claim or a debt under this title; or

(19) that--

(A) is for--

(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from--

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a).

> An obligation to repay the United States under this subsection [an unearned bonus] is, for all purposes, a debt owed the United States. A discharge in bankruptcy under title 11 does not discharge a person from such debt if the discharge order is entered less than five years after—
>
> > (A) the date of the termination of the agreement or contract upon which the debt is based; or
> >
> > (B) in the absence of such an agreement or contract, the date of the termination of the service on which the debt is based.

37 U.S.C. § 303a(e)(4). The court must examine whether the list of non-dischargeable debts set forth in 11 U.S.C. § 523(a) is exclusive, as argued by the Plaintiff, or whether if it can be supplemented by nonbankruptcy law such as 37 U.S.C. § 303a(e)(4) upon which the Defendant relies.

On January 6, 2006, Congress enacted 37 U.S.C. § 303a(e) as part of the National Defense Act for Fiscal Year 2006. The legislative history for this act provides that its amendments to 37 U.S.C. § 303a "shall apply to any case commenced under title 11, United States Code, after March 30, 2006." National Defense Authorization Act for Fiscal Year 2006, Pub.L. No. 109-163, § 687, 119 Stat. 3136. Significantly, Congress passed this act after the most recent major amendment to the Bankruptcy Code, the *Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*. The court is aware of three opinions addressing 37 U.S.C. § 303a(e), and in each case, the issuing bankruptcy court found that the statute was indeed effective to except obligations to repay a military bonus from a debtor's Chapter 7 discharge. This court agrees.

In both *In re Dickinson*, Case No. 11-62340 (Bankr. S.D. Ohio Aug. 7, 2013) and *In re Fagan*, 559 B.R. 718 (Bankr. E.D. Cal. 2016), the courts began their analyses by finding that when possible, two seemingly conflicting statutes should be interpreted in a way so as to give effect to each. This district recognized this basic rule of statutory construction when considering conflicting provisions of the Bankruptcy Code and the Farm Credit Act: "When two statutes are capable of

28

coexistence, it is the duty, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Fed. Land Bank of Columbia v. Massengill (In re Massengill)*, 100 B.R. 276, 279 (E.D.N.C. 1988). While giving effect to each statute, the later statute should be construed "as implicitly amending an earlier, more general statute." *Fagan*, 559 B.R. at 721 (citations omitted).

Applying this principle to the conflict between 11 U.S.C. § 727(b) and 37 U.S.C. § 303a(e), both the *Dickinson* court and the *Fagan* court found the latter to be more specific. In *Fagan*, the court interpreted 11 U.S.C. § 303a(e) as well as the similar 37 U.S.C. § 373(c)[29] as follows:

> If they do not surmount Bankruptcy Code § 727(b), then they would have no effect. It would, however, be absurd to construe them as having no effect in the face of an earlier, more general statute. Congress must have meant for those two statutes to mean something. That something is an implicit amendment to the earlier statute adding an extra "except" clause to Bankruptcy Code § 727(b).
>
> It follows that § 303a(e)(4) and § 373(c), in order to be given any effect at all, must be construed as creating exceptions to bankruptcy discharge regardless of the seemingly-comprehensive language of Bankruptcy Code § 727(b).

*Id.* at 721-22.

The *Dickinson* court recognized that the Bankruptcy Code does not expressly preclude consideration of other Federal law governing dischargeability of debts:

> For example, § 727(b) provides in part that "except as provided in section 523 of this title, a discharge under subsection (a) . . . discharges the debtor from all debts . . ." that arose prepetition. Congress could have written into the statute language such as "notwithstanding any other Federal law and except as provided in section 523 of this title" but it did not. Similarly, 11 U.S.C. § 523 also fails to contain any

---

[29] 37 U.S.C. § 373(c) renders non-dischargeable an obligation to repay a general bonus for enlisted members authorized under 37 U.S.C. § 331 as opposed to a special bonus like the Plaintiff's Bonus which is authorized under 37 U.S.C. § 308. The wording of 37 U.S.C. § 373(c) is almost identical to that of 37 U.S.C. § 303a(e)(4):

> Effect of bankruptcy.—An obligation to repay the United States under this section is, for all purposes, a debt owed the United States. A discharge in bankruptcy does not discharge a person from such debt if the discharge order is entered less than five years after—
> (1) the date of the termination of the agreement or contract on which the debt is based; or
> (2) in the absence of such an agreement or contract, the date of the termination of the service on which the debt is based.

37 U.S.C. § 373(c).

> limiting language indicating that it is the exclusive list of nondischargeable debts. Nor does § 523 contain any language prohibiting this Court's consideration of any other Federal laws on the issue. And although the phrase in § 523 "A discharge . . . does not discharge an individual debtor from any debt [set forth herein]" could lead one to believe that those debts listed in 11 U.S.C. § 523 are an exclusive list of categories of debts that may be excepted from discharge, the tenets of statutory construction mandate otherwise.

*Dickinson*, Case No. 11-62340, at 9-10.

The court follows *Dickinson* and *Fagan* in holding that 11 U.S.C. § 727(b) and 37 U.S.C. § 303a(e)(4) are not irreconcilable; therefore, both statutes are effective, and 37 U.S.C. § 303a(e)(4) controls the dischargeability of unearned military bonuses such as the Unearned Bonus owed by the Plaintiff. To adopt the Plaintiff's position that 11 U.S.C. § 523(a) provides an exclusive list of non-dischargeable debts "would essentially render 37 U.S.C. § 303(e)(4) superfluous and void, which is something this Court cannot do." *Id.* at 10-11. *See also Boyd v. U.S. Dept. of Defense (In re Boyd)*, Case No. 5:12-bk-71108 (Bankr. W.D. Ark. Jan. 8, 2015) (recognizing that some exceptions to discharge are located outside the Bankruptcy Code and holding that 37 U.S.C. § 303a(e)(4) renders non-dischargeable an obligation to repay an unearned military bonus). The court hopes that, when given an opportunity, Congress will incorporate into 11 U.S.C. § 523(a) the terms of 37 U.S.C. § 303a(e)(4) and similar Federal laws affecting dischargeability. In the meantime, the court cannot ignore these statutes' effectiveness simply because they are codified outside of the Bankruptcy Code.

Applying 37 U.S.C. § 303a(e)(4) to the specifics of this case, the Plaintiff's obligation to repay the Unearned Bonus is non-dischargeable if the Bankruptcy Discharge was entered less than five years after the date of the *termination* of the agreement upon which the debt is based, that agreement being the Bonus Contract. Master Sergeant Hallum testified that the Military Discharge effectively terminated the Reenlistment Contracts and the Bonus Contract; however, the Plaintiff

contended that he never received any formal notice of termination or understood that being discharged from the Army would operate as a termination of these contracts.

"A 'discharge,' in military terms, is generally understood to be a 'complete termination' of military service . . . ." *Willenbring v. United States*, 559 F.3d 225, 231 (4th Cir. 2009) (citations omitted). Termination of military service inherently includes termination of all enlistment and other contracts between the applicable military branch and the discharged service member. The court finds that the Bonus Contract was terminated for purposes of 37 U.S.C. § 303a(e)(4) on March 26, 2014, the date of the Military Discharge. This date is less than five years prior to the Plaintiff's Bankruptcy Discharge on November 9, 2015; therefore, the Defendant's Claim is non-dischargeable.

## CONCLUSION

The Defendant is allowed its Claim against the Defendant in the amount of $8,989.64, representing the Plaintiff's contractual obligation to repay the Unearned Bonus, and this indebtedness is excepted from the Plaintiff's Bankruptcy Discharge pursuant to 37 U.S.C. § 303a(e)(4). In accordance with Rule 58(a) of the Federal Rules of Civil Procedure, incorporated by Rule 7058 of the Federal Rules of Bankruptcy Procedure, the court entered Judgment in favor of the Defendant on March 31, 2017.

## END OF DOCUMENT